SPAULDING, APPELLANT, *v.* STONE ET AL., RESPONDENTS.

(No. 3,206.)

(Submitted November 30, 1912.   Decided December 18, 1912.)

[129 Pac. 327.]

*Water Rights—Newly Developed Supply—Burden of Proof—*
*Evidence—Insufficiency—Improper Decree—Stipulations as*
*to Existence of Facts—Effect.*

Trial—Evidence—Stipulations—Effect.
    1.   The purpose of a stipulation that a certain thing is a fact is to
relieve the parties from the necessity of introducing evidence as to it;
if such fact is material, the court is as to it bound by the stipulation;
it is equivalent to a special finding.
Water Rights—Number of Inches Per Acre—Stipulation.
    2.   The parties to a water right suit at the opening of the trial stipu-
lated that one inch of water per acre was to be deemed sufficient to
irrigate the lands mentioned in the pleadings.   The court found that
three-fourths of an inch per acre was a reasonable allowance.   Appel-
lant was awarded the right to use sixty inches of water without con-
dition.   The evidence showed that except during high-water season and
late in the fall after the irrigating season is over, the flow in the
creek in dispute is never equal to the amount awarded appellant, and
that his original appropriation did not include a greater amount than
sixty inches.   *Held,* that under these conditions the stipulation covered
a point immaterial as to him, and was therefore not binding upon the
court.
Same—Newly Developed Supply—Burden of Proof.
    3.   One who claims to have developed a new and independent supply
of water, by the construction of a ditch intercepting water which forms
no part of the sources of the natural flow in a stream all the water in
which has been appropriated, has the burden of showing that such
new supply is indeed a newly developed one, especially so where such
alleged new supply is commingled with water in a stream to which an-
other is entitled.
Same—Evidence—Insufficiency.
    4.   Evidence *held* insufficient, under the rule *supra,* to demonstrate
that respondents by the construction of a ditch, intended for the pur-
pose of draining certain lands, developed a new supply, without inter-
cepting water which would otherwise find its way into a creek to all the
water in which appellant was entitled.
Same—Draining Wet Lands—Duty of Owner.
    5.   While an owner of wet and marshy land may resort to any suitable
means to reclaim them, he may not adopt a method which incidentally
operates to the detriment of the water right of his neighbor.
Same—Improper Decree.
    6.   One who is entitled to the use of all the water flowing in a stream
cannot be compelled by decree of court to make demand for its use
upon others who claim to have increased the flow in the stream by the
development of a new supply; it is incumbent upon the latter to as-
certain whether they may divert their alleged new supply without in-
fringing upon his rights.

*Appeal from District Court, Gallatin County; E. K. Cheadle, Judge of the Tenth Judicial District, presiding.*

Action by Nelson Spaulding against Leonard Stone and others to determine the respective rights of the parties in the use of the water flowing in Spaulding brook. Plaintiff appeals from the decree and from an order denying his motion for a new trial. Remanded with directions. Mr. Justice Holloway dissents.

*Messrs. Hartman & Hartman,* and *Mr. Walter Aitken,* for Appellant, submitted a brief; *Mr. Charles S. Hartman* and *Mr. Aitken* argued the cause orally.

*Mr. B. B. Law* submitted a brief in behalf of Respondents and argued the cause orally.

MR. JUSTICE BRANTLY delivered the opinion of the court.

Plaintiff brought this action to obtain a decree adjudging him a prior right to the use of all the water flowing in Spaulding brook, in Gallatin county, for agricultural purposes and for watering his stock, and enjoining the defendants from diverting any portion thereof from its natural channel. The stream has its source in the southeast portion of section 21, Tp. 1 N., R. 4 E., and flows in a northwesterly direction through sections 21, 16, 17, 8 and 5 into East Gallatin river. The lands belonging to plaintiff include the east half of section 5. Portions of them are arid and require artificial irrigation. The lands owned by the defendants are situated in sections 21, 8 and 7, and the west half of section 5. These also require artificial irrigation. The plaintiff bases his claim upon an appropriation of 100 inches made in 1898. He alleges a diversion by means of ditches constructed by himself, and continuous use up to the time of the bringing of the action, except that during the year 1910 the defendants constructed a ditch by which they diverted all the water entirely away from his lands. He also alleges that defendants threaten to continue their unlawful conduct to his irreparable injury. While the defendants controvert the material allega-

tions of the complaint, they do not assert claim to any water flow-ing in the stream.   They allege in substance that the defendant Stone owns land to the extent of 320 acres in section 21, which are valuable for agricultural purposes only; that the general slope of the portion of Gallatin valley upon which these lands lie is toward the northwest; that to the south and east and above these lands are large areas which are irrigated two or three times each year, with the result that they become saturated with water, which, by seepage and percolation, finally reaches the lands of defendant Stone, rendering portions of them wet and swampy and unfit for cultivation unless they are drained; that this con-dition had increased to such an extent that the said Stone in-duced his codefendants to construct during the years 1908, 1909 and 1910 a drainage ditch for the purpose of draining his lands and preventing them from becoming wholly useless, the consid-eration being that his codefendants should have the exclusive use of the drainage water thus collected, upon their lands situ-ated farther to the northwest; but that the said ditch did not in any way interfere with the natural flow in Spaulding brook.   By stipulation of counsel at the opening of the trial these allegations were deemed denied by plaintiff, and each of the parties was accorded the right to show abandonment, adverse use, *etc.*, with-out formal pleading, if he should be able to do so.   It was also stipulated that unless otherwise shown by the evidence, one inch per acre was to be deemed sufficient to irrigate any of the lands mentioned in the pleadings.

The court found: (3) That three-fourths of a statutory inch of water per acre is a reasonable allowance for the irrigation of any of the lands belonging to any of the parties; (4) that on May 1, 1899, the plaintiff, by means of dams and ditches, diverted from the stream for use upon eighty acres of his lands sixty inches of water, and that he has continuously used this amount up to the present time; (5) that during the spring and summer of the year 1910 the defendants J. H. Green, Mary E. Green, William, James and Robert Gover constructed a drainage ditch traversing section 21, in which Spaulding brook has its source; that this ditch for the distance of half a mile is nearly

parallel with the channel of Spaulding brook, and intersects it at several points, the last point being near the south line of section 16, from which it leaves the course of the brook and continues in a northwesterly direction, and that the depth of the ditch is greater than that of the channel of the stream; (6) that by reason of its greater depth the ditch intercepts and carries away a considerable portion of the water which would otherwise flow in Spaulding brook and reach the lands of the plaintiff, and also, by reason of its greater depth, carries away a considerable quantity of water which would not naturally rise and flow into Spaulding brook; (7) that one-half of the water flowing in the ditch would otherwise find its way into the stream, while the other half is derived from drainage from water percolating below the surface of the soil which would not naturally rise and flow in Spaulding brook; (8) that on June 1, 1910, the said defendants diverted all the water so collected in the ditch and applied it to their own use; (9) that a considerable portion of the water flowing in Spaulding brook has its source below the lowest point at which the defendants' ditch intersects the natural channel. From these findings the court concluded that the plaintiff is entitled to the use of sixty inches as of date May 1, 1899, including one-half of the flow in defendants' ditch, and that the defendants are entitled to the remainder. The decree adjudges the rights of the parties accordingly. It specifically requires the defendants, other than Stone, to construct and maintain at their own expense a suitable dam, with headgate and measuring-box, in the ditch at the point where it last crosses the channel of the stream, and to deliver to plaintiff, whenever he demands it, one-half of the water flowing in the ditch. The plaintiff has appealed from the decree and from an order denying his motion for a new trial.

1. The first contention made is that the court erred in failing to find that the purpose of plaintiff's appropriation was not only to irrigate his lands in section 5, but also to water his livestock and to furnish a supply for domestic use, and in omitting to formulate the decree so as to include this latter right. Counsel for defendants concede that the findings and decree should be

amended in this particular. We are, therefore, relieved from the necessity of determining the right of this contention.

2. No evidence was introduced by any of the parties tending to show what amount of water is necessary to irrigate any of their lands. Aside from the stipulation made at the commencement of the trial, the record is silent on this point. Counsel for plaintiff insist that the finding that three-fourths of a statutory inch per acre is sufficient is not justified by the evidence. The purpose of such a stipulation is to relieve the parties from the [1] necessity of introducing evidence as to the ultimate fact covered by it. If the fact is material, the court is, as to it, bound by the stipulation. It amounts to a special finding. (Rev. Codes, sec. 6769.) Under the circumstances disclosed by the record, however, we think the finding is immaterial. It appears that the flow of water in Spaulding brook is intermittent. Except during the high-water season early in the spring, and late in the fall after the irrigation season is over, the flow at any point is never equal to the amount the decree awards to the plaintiff. The flow was measured by an engineer several times during the years 1910 and 1911. A measurement made in April, 1911, [2] during the high-water season at the point where the ditch diverges from the course of the stream, which included also all the water flowing in the ditch, showed a flow of sixty-two inches. This was the largest volume shown by any measurement. The evidence shows almost conclusively, as the court found, that the original appropriation of plaintiff did not include any greater amount than that awarded him. This being so, and his right to the use of this amount being awarded to him without condition, it is wholly immaterial whether his lands require a greater or less amount per acre.

3. The third contention is that there is no substantial evidence tending to show that any of the water flowing in the ditch comes from sources other than those which supply Spaulding brook, and hence that findings 6 and 7 are not justified by the evidence. Since the defendants do not assert the right to the use of any of the water naturally flowing in the brook, the plaintiff is entitled, as against them, to the use of all of it without interference

by them.  Such right as they have is founded upon the claim that
they have intercepted water which would not flow into Spaulding
brook by drainage from Stone's lands.  The brook has its source
within the area of these lands.  The defendants' ditch has its
head in section 22 and traverses section 21, running substantially
parallel with the brook (in fact crossing it at four different
points) from its source to the south boundary line of section 16,
where it diverges from it at a wide angle.  The map of the local-
ity which we find in the record demonstrates that the defend-
ants' purpose in constructing it was to provide a new channel for
Spaulding brook down to the point of divergence and thus facili-
tate the flow of water which they would be able to collect from
sections 21 and 22 for their own use.  The evidence conclusively
shows that it diverts the entire natural flow of the brook into its
own channel and conveys it all down to the point at which it
diverges from the channel of the brook.  If by the construction
of the ditch the defendants have developed a new supply of
[3]   water, or, in other words, have collected from the lands in
sections 21 and 22 water which forms no part of the sources of
the natural flow in the brook, they are entitled to the exclusive
use of it for any purpose to which they may choose to devote it
(*Beaverhead Canal Co.* v. *Dillon El. L. & P. Co.*, 34 Mont. 135,
85 Pac. 880), but the burden is upon them to show that the sup-
ply claimed to be new and independent is really such.  In *Smith*
v. *Duff*, 39 Mont. 382, 133 Am. St. Rep. 587, 102 Pac. 984, this
court said: "Whoso asserts that he is entitled to the exclusive use
of water by reason of its development by him must assure the
court by satisfactory proof that he is not intercepting the supply
to which his neighbor is rightly entitled.  Thus the burden was
upon the respondents to prove that they developed the 160 inches
of water awarded them by the court."  The burden thus made
to rest upon the one who claims such developed supply includes
also the obligation to establish by satisfactory proof the amount
which he has developed, especially so when he has mingled his
alleged new supply with that to which another is entitled, for
he cannot justify an interference with a right which he does not
question.  While he may be entitled to the use of the natural

channel of the stream out of which the prior appropriation has been made, or to change it, in order to serve his own convenience or save expense, he cannot for this reason impose any additional burden upon the prior appropriator. When he comes to divert from it his developed supply he must make his diversion in such a way as not to interrupt or diminish the natural flow, and must at his peril take no more than he is entitled to.

When we come to analyze the evidence, we do not find any statement by any witness, even in the form of an opinion, which [4] justifies the conclusion that the defendants by the construction of their ditch increased the natural flow of Spaulding brook by any substantial amount which can be ascertained definitely by measurement. It is true that some of the witnesses testified that portions of Stone's lands are dryer than they were before the ditch was constructed; but this evidence falls far short of establishing the fact that the natural flow in Spaulding brook was thereby increased. So far as this fact furnishes the basis for any inference, it is that the ditch merely, by accelerating the flow, has accomplished the drainage of these lands in part. An engineer, who seems to have acted for all the parties, made several measurements of the volume flowing in the ditch. He expressed the opinion that one-half of it was surface water and that the remainder came in by percolation and seepage. He did not express the opinion, however, that by the construction of the ditch the defendants had increased the natural flow by any definite amount. On the contrary, he was of the opinion that both surface and seepage water coming down from above the ditch, would, but for its interception by the ditch, naturally find its way into the stream. One witness, Gibson, who had been acquainted with the stream for twenty years, stated that the flow in the ditch did not differ substantially from the natural flow in the stream as he knew it before the ditch was constructed. This is all the evidence, of any substantial character, in the record. Under the rule stated in *Smith* v. *Duff, supra,* it is wholly insufficient to support findings 6 and 7 as to the volume of water developed by defendants' ditch. It rather justifies the inference that defendants have succeeded partially in the ostensible pur-

pose which they sought to accomplish, *viz.*, the drainage of Stone's lands, while incidentally they have cut off in part, if [5] not wholly, the source of supply to the brook and diverted it to their own use. Let it be conceded that Stone may lawfully resort to any suitable device in order to reclaim his lands, still he may not adopt a method which incidentally operates to the detriment of plaintiff's right.

In this connection we may notice a feature of the decree which we do not think would be warranted under any evidence, however convincing it might be as establishing the right asserted by [6] the defendants. It requires defendant to deliver to plaintiff one-half of the water flowing in the ditch ''upon demand.'' The plaintiff is entitled under the evidence to the uninterrupted use of all the water flowing in the stream. It is incumbent upon the defendants, if they desire the use of any of the water, to ascertain that they may divert it without infringing upon plaintiff's rights. Plaintiff may not lawfully be required, when he desires to avail himself of his right, which the defendants do not question, to submit to the inconvenience of making demand upon them for its use.

We are of the opinion that under the evidence in the record the plaintiff is entitled to findings and a decree awarding him all the water flowing in Spaulding brook to the full amount of sixty inches whenever his necessities require it, including the entire amount flowing in the ditch when necessary; that the defendants are entitled to such surplus water, if there is any, as is collected in the ditch, but in taking it they must refrain from decreasing the flow at any time below the amount to which the plaintiff is entitled; and that the cause should be remanded to the district court with directions to set aside the decree heretofore entered and to reform the findings so as to make them accord with the views herein expressed, and that a decree be entered in conformity therewith. It is so ordered.

MR. JUSTICE SMITH concurs.

MR. JUSTICE HOLLOWAY: I dissent. I agree that the decree should be amended so that it will secure to plaintiff his water

right for domestic and other lawful purposes, and this, too, without imposing upon him the burden of making demand, but further than this I am unwilling to go. In my judgment, the evidence is ample to justify the trial court's finding that only one-half of the water in the Gover ditch constitutes any part of the natural source of supply of Spaulding brook.

ON MOTION FOR REHEARING.

(Submitted January 6, 1913. Decided January 15, 1913.)

MR. JUSTICE SANNER delivered the opinion of the court.

The motion for rehearing is denied, but to the order heretofore entered we make the following addition: That the district court of Gallatin county, within such reasonable time as it may allow, not beyond the next irrigating season, hear such further evidence as may be offered touching the amount of water flowing in the Gover ditch directly attributable to the respondents' development, and award such amount to them as may then be warranted by all the evidence in the case; if no such evidence be offered, or if after such further hearing the evidence is still insufficient to fix the amount with reasonable precision, then to proceed as directed in the opinion.

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.