STATE ex rel. ZOSEL, Relator, *v.* DISTRICT COURT
ET AL., Respondents.

(No. 4,513.)

(Submitted November 22, 1919.   Decided December 10, 1919.)

[185 Pac. 1112.]

*Contempt — District Court — Jurisdiction — Review — Record—
Certiorari—Supervisory Control—Waters and Water Rights
—Defenses—Development of New Supply.*

Waters and Water Rights—Rights of Appropriator—Increase in Flow of Stream.
  1.   The rights of the appropriator of the waters of a stream are limited to its natural condition at the time the appropriation is made, and are not enlarged by subsequent improvements made by another which increase the supply flowing in it.
Same—Development of New Supply—Right to Use.
  2.   A person who by his own exertions creates a new or independent source of water supply—one which would not otherwise have flowed

in a stream, the waters of which have been appropriated—has the prior right to use it to the extent of the increase.

Same—Adjudicated Rights—What Constitutes Contempt.
  3.   Where all the water flowing in a stream was needed by prior appropriators according to rights adjudicated by decree of court, the use of a portion thereof by a junior appropriator constituted, *prima facie,* a violation of the decree and a contempt of court.

Same—Contempt—Defenses—What Competent to be Shown.
  4.   One charged with contempt of court because of a violation of a decree adjudicating rights to the use of water flowing in a stream may, for the purpose of exonerating himself and for no other, show that by his own efforts he had developed an independent water supply and that the quantity used by him did not exceed the amount so developed.

Same—Title to Water—Not Determinable in Contempt Proceeding.
  5.   The right to the exclusive use of water in a stream alleged to have been developed by the efforts of one who was not entitled to the use of any of the natural supply flowing therein if it was needed by prior appropriators, was not determinable in contempt proceedings in which he was on trial for a violation of the decree adjudicating the rights of the users of water taken from the stream.

Contempt—District Court—Jurisdiction.
  6.   For the violation of a lawful judgment or order of the district court, it alone has authority to inflict punishment, the right of appeal being denied.

Same—*Certiorari*—Supervisory Control.
  7.   *Certiorari* lies to review the action of the district court in adjudging one guilty of contempt if it acted without jurisdiction; whereas supervisory control is the proper remedy where the court, acting within jurisdiction, does so in a manner so arbitrary and unlawful as to be tyrannical.

Same—Supervisory Control—Record—Review.
  8.   On application for writ of supervisory control to review an order adjudging one guilty of contempt, the supreme court is limited to an examination of the record for the purpose of ascertaining whether there was any substantial evidence to justify the court's action.

Same—Witnesses—Credibility—Weight of Testimony—Not Reviewable by Supreme Court.
  9.   The credibility of the witnesses heard by the district court in a contempt proceeding and the weight to be given to their testimony were matters for its determination, and not reviewable by the supreme court on application for writ of supervisory control.

Original application by the State, on the relation of William Zosel, to review an order of the District Court of Powell County, and Geo. B. Winston, the judge thereof, adjudging relator guilty of contempt and imposing a fine.   Proceedings dismissed.

*Mr. Edward Horsky,* for Relator, submitted a brief and argued the cause orally.

*Mr. S. P. Wilson,* for Respondents, submitted a brief and made oral argument.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

In an action pending in Powell county, wherein William Zosel was a defendant, a judgment was rendered on March 2, 1906, determining the relative rights of the parties to the use of the waters of Cottonwood Creek and Baggs Creek, its tributary. Zosel was awarded the right to the use of 100 inches as of date March 1, 1883, and 75 inches as of date March 1, 1884. There were prior appropriations aggregating more than 1,600 inches. On June 10 of this year, the water flowing in these creeks was less than 1,000 inches, and the commissioner appointed by the court to distribute the water under the decree closed the headgates to Zosel's ditches in order to permit the water which Zosel was using, to flow down to the prior appropriators. Zosel reopened the headgates and continued to use about 100 inches of water until he was arrested, charged with contempt. The trial resulted in an order adjudging him guilty and imposing a fine. To review that order this proceeding was instituted.

Upon the trial Zosel admitted that he had reopened the headgates to his ditches and used the water in defiance of the commissioner, but undertook to show that his use of the water did not impair the right of any prior appropriator; that by early irrigation of his land there was created a subterranean storage system upon his land from which, during the later irrigation season, there was returned, in seepage, water to the creeks—as much water as he was using through his ditches—and that this condition prevailed at the time of the alleged contemptuous acts of which complaint was made.

When an appropriation is made of the waters of a stream, [1, 2] the rights of the appropriator are limited to the natural condition of the stream at the time the appropriation is made, and are not enlarged by subsequent improvements made by another which increase the supply flowing in the stream, and if such other person by his own exertions increases the available supply, he has the prior right to use it to the extent of the

increase.   It is not sufficient, however, that the increase is occasioned by the mere removal of obstructions which accelerates the flow.   It must constitute a new or independent source of supply,—a supply which would not otherwise have flowed in the stream.   (*Beaverhead Canal Co.* v. *Dillon E. L. & P. Co.*, 34 Mont. 135, 140, 85 Pac. 880; *Smith* v. *Duff*, 39 Mont. 382, 391, 133 Am. St. Rep. 587, 102 Pac. 984; *Spaulding* v. *Stone*, 46 Mont. 483, 488, 129 Pac. 327.)

By the terms of the decree, whenever the waters of these [3] streams receded to an amount less than 1,619 inches, relator was not entitled to the use of any of the water which constituted a part of the natural supply, if the water was needed by the prior appropriators; and it appearing that all the water flowing in the streams was needed by the prior appropriators, relator's use of a portion of the water constituted, *prima facie,* a violation of the decree and a contempt of court.   (Rev. Codes, sec. 7309.)

To exonerate himself from the charge of contempt, and for [4] that purpose only, it was competent for relator to show that, by his own efforts, he had developed an independent source of supply and that the quantity of water used by him did not exceed the amount so developed.   He could not, however, establish his right to the use of the so-called developed water as [5] against the prior appropriators.   The title to property cannot be tried in a contempt proceeding.   (*Ryan* v. *Quinlan,* 45 Mont. 521, 530, 124 Pac. 512.)   If relator has acquired the right to which he lays claim, he must have it determined in a civil action to which others interested may be made parties.

Contempt proceedings are *sui generis.*   (*State ex rel. Boston* [6] *& Mont. Co.* v. *Judges,* 30 Mont. 193, 76 Pac. 10.)   For the violation of a lawful judgment or order of the district court, that court alone has authority to inflict punishment, and so far exclusive is the authority that by express legislative declaration the right of appeal is denied.   (Rev. Codes, sec. 7322.)

If, in adjudging one guilty of contempt, the court acts with- [7, 8] out jurisdiction, the proceedings may be reviewed on

*certiorari* (sec. 7322, above), and in exigent cases where the court acts within jurisdiction, but in a manner so arbitrary and unlawful as to be tyrannical, this court may intervene by virtue of the power conferred by the Constitution, to exercise supervisory control over inferior courts. (*State ex rel. Sutton* v. *District Court,* 27 Mont. 128, 69 Pac. 988; *State ex rel. Coleman* v. *District Court,* 51 Mont. 195, 149 Pac. 973.) In such a case, however, our review of the proceedings is limited to an examination of the record for the purpose of ascertaining whether there is any substantial evidence to justify the order adjudging the accused guilty. (*State ex rel. Boyle* v. *District Court,* 27 Mont. 134, 69 Pac. 671.)

In reaching the conclusion that the relator, in this instance, **[9]** was guilty, the trial court necessarily passed upon the credibility of the witnesses and the weight to be given to their testimony. Those subjects are excluded from our review.

There is some substantial evidence to justify the order, and, therefore, this is not a proper case for our interference.

The motion to quash is sustained and the proceedings are dismissed.

*Dismissed.*

MR. CHIEF JUSTICE BRANTLY and ASSOCIATE JUSTICES HURLY and COOPER concur.